COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| BRYAN S. FOSTER D/B/A JAGUAR'S GOLD CLUB, | § | No. 08-10-00157-CV |
| | § | |
| Appellant, | § | Appeal from the |
| | § | |
| v. | § | 34th District Court |
| | § | |
| CITY OF EL PASO, | § | of El Paso County, Texas |
| | § | |
| Appellee. | § | (TC# 2007-2900) |

**O P I N I O N**

Appellant, Bryan S. Foster doing business as Jaguar's Gold Club (Foster),[1] appeals the trial court's summary judgment in favor of the City of El Paso, Appellee, stemming from Foster's challenge to the constitutionality of the City's sexually-oriented business ordinance. Foster also appeals the trial court's denial of his motion to strike the City's expert testimony.

**BACKGROUND**

In November 2006, an adult cabaret owner was convicted of engaging in organized criminal activity, which involved a prostitution ring operated out of her adult cabaret.[2] Thereafter, in the early part of 2007, the City began investigating the conduct, licensing standards, and the negative secondary effects of adult establishments in an effort to update its sexually-oriented business ordinance. The City looked at 25 federal judicial opinions issued by various courts, including the United States Supreme Court and the Fifth Circuit Court of Appeals,

---

[1] Jose F. Fong, doing business as Tequila Sunrise, and Foster, as plaintiffs, initiated the proceedings. Because Foster alone appeals the trial court's summary judgment order, we restrict our references to Foster.

[2] *See Woodall v. State*, No. 08-07-00015-CR, 2011 WL 6748490, at *1 (Tex.App. – El Paso Dec. 22, 2011, no pet.) (not designated for publication).

that discussed the negative secondary effects associated with sexually-oriented businesses. The City also considered 21 municipal land-use studies, crime reports, and affidavits that described the secondary effects occurring in and around such establishments. At a public meeting on April 23, 2007, the City considered a presentation detailing the negative secondary effects associated with sexually-oriented businesses, and heard numerous public comments regarding the negative impacts of those establishments.

On May 8, 2007, the City adopted a new sexually-oriented business ordinance ("the ordinance").[3] The ordinance identified judicial opinions and municipal studies upon which the City relied in adopting the ordinance, and included a statement that the City found that sexually-oriented businesses are associated with "a wide variety of adverse secondary effects," which include "personal and property crimes, prostitution, potential spread of disease, lewdness, public indecency, obscenity, illicit drug use and drug trafficking, negative impacts on surrounding properties, urban blight, litter, and sexual assault and exploitation." The ordinance declared that each of the foregoing negative secondary effects constitutes a harm against which the City has a substantial government interest in preventing or abating. To address these concerns, the new ordinance requires, in part, that sexually-oriented businesses have open, instead of closed, booths for customers viewing sexually-oriented videos, unobstructed employee views of the entire premises to which a patron is provided access for any purpose, overhead lighting fixtures sufficient to illuminate every place to which patrons are permitted, and employee licensing for those working in such establishments.

---

[3] El Paso, Tex., Ordinance No. 016624 (May 8, 2007) as amended and codified in The City of El Paso, Texas , Code of Ordinances ch. 5.09.

On June 20, 2007, Foster filed original and supplemental petitions seeking declaratory and injunctive relief, attorney's fees, and a jury trial of his claims that the ordinance violates numerous constitutional provisions and state law. In twelve "counts," Foster asserts that the City's sexually-oriented business ordinance violates the Texas Constitution[4] and is unconstitutional, both facially and as applied, because it allegedly: (1) abridges and restrains his rights to free expression; (2) constitutes a prior restraint on such expression; (3) has an impermissible chilling effect upon constitutionally-protected speech and expression; (4) denies equal protection of the law; (5) is "arbitrary and capricious as applied to [Foster's] businesses;" (6) is an unlawful exercise of the state's police power because "there is no substantial relationship to the protection of the public health and welfare or any legitimate governmental objective, resulting in the fact that there has been no proper predicate for the basis of the challenged legislation;" (7) is vague and indefinite and fails to set out distinct criteria; (8) lacks adequate procedural safeguards; (9) manifests an improper purpose in that the ordinance is not content-neutral and not unrelated to the suppression of free speech; (10) contains restrictions that are overbroad and far greater than are essential to the furtherance of the alleged government interest; (11) grants unbridled discretion to administrative officials in the enforcement of its provisions; and (12) was adopted without competent, substantial evidence and the evidence upon which the City relied in adopting the ordinance was not

---

[4] Appellant complains in "Counts" I, II, III, and X that the ordinance violates Article I, Section 8 of the Texas Constitution, which provides:

> Every person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege; and no law shall ever be passed curtailing the liberty of speech or of the press. In prosecutions for the publication of papers, investigating the conduct of officers, or men in public capacity, or when the matter published is proper for public information, the truth thereof may be given in evidence. And in all indictments for libels, the jury shall have the right to determine the law and the facts, under the direction of the court, as in other cases. TEX. CONST. art. 1, § 8.

In his remaining "Counts," Appellant asserts without specification that the ordinance violates the rights guaranteed him by the Texas Constitution.

reasonably related to the perceived ills which the City purported to address nor to any legitimate government objective.

Foster further complained that the ordinance lacks "any methodologically sound or proper legislative basis or predicate, imposes an unreasonable and unnecessary limitation on expression and constitutionally protected activities," fails to provide adequate alternative avenues of communication or to advance any legitimate governmental interest, and is "unconstitutionally vague and overbroad" in violation of the Texas Constitution. Foster brought the action to address the constitutional validity of the ordinance's provisions, asserted that the ordinance violates Sections 8, 19, and 29 of Article 1 of the Texas Constitution and his rights thereunder, sought injunctive relief from the enforcement of the ordinance's provisions, and sought a declaratory judgment finding the ordinance to be unconstitutional because its provisions denies Foster's rights to free speech and expression, due process, equal protection, and adequate procedural safeguards as guaranteed by the Texas Constitution.

In August 2007, the trial court held an extensive hearing on Foster's motion for a temporary restraining order. With one narrow exception that we need not address in resolving the matters before us, the trial court denied the temporary restraining order based on "decisions by Texas courts, the United States Supreme Court, and the United States Court of Appeals for the Fifth Circuit [that] have repeatedly rejected constitutional challenges to ordinances like the one at issue here . . . ."

Following discovery, the City moved for summary judgment on grounds that the ordinance was a constitutional regulation of the time, place, and manner in which sexually-oriented

4

businesses must operate in the city.[5]  In support of its motion, the City explained that the United States Supreme Court, the United States Court of Appeals for the Fifth Circuit, and Texas appellate courts have rejected constitutional challenges like those in Foster's petition.

Foster filed a lengthy response to the City's motion for summary judgment, objected to the City's evidence, and attached expert evidence in support thereof.[6]  On March 10, 2010, the trial court granted summary judgment in favor of the City.

## DISCUSSION

In Issues One, Two, Three, Four, Six, and Seven, Foster contends that the trial court erred in granting the City's motion for summary judgment.   In Issue Five, Foster asserts that the trial court erred in denying his motion to strike the City's expert witness.

### Standard of Review

We review a trial court's decision to grant a motion for summary judgment *de novo*. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *E.B.S. Enterprises, Inc. v. City of El Paso*, 347 S.W.3d 404, 407 (Tex.App. – El Paso 2011, pet. denied).   Summary judgment is appropriate when there is no genuine issue as to any material fact and judgment should be granted in favor of the movant as a matter of law.   TEX. R. CIV. P. 166a(c); *E.B.S. Enterprises, Inc.*, 347 S.W.3d at 407; *Melendez v. Padilla*, 304 S.W.3d 850, 852 (Tex.App. –El Paso 2010, no pet.).   In determining whether there are disputed issues of material fact, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference in the

---

[5] Even speech that is protected under the First Amendment is not equally permissible in all places and at all times, and it may be subject to reasonable time, place, or manner restrictions.   *Snyder v. Phelps*, 131 S.Ct. 1207, 1218, 179 L.Ed.2d 172 (2011).

[6] On November 27, 2007, four adult book-video stores filed a separate but nearly identical suit challenging the City's ordinance.   Their suit was consolidated with this one.   In a separate appeal, we affirmed the trial court's summary judgment in favor of the City and against the adult book-video stores.   *E.B.S. Enterprises, Inc. v. City of El Paso*, 347 S.W.3d 404, 413 (Tex.App. – El Paso 2011, pet. denied).

nonmovant's favor. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985); *E.B.S. Enterprises, Inc.*, 347 S.W.3d at 407. "A defendant who conclusively negates at least one of the essential elements of a cause of action or conclusively establishes an affirmative defense is entitled to summary judgment." *Frost Nat. Bank. v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010).

On appeal, we determine whether the defendant, in seeking summary judgment, fulfilled his initial burden (1) to establish as a matter of law that there remained no genuine issue of material fact as to one or more essential elements of the plaintiff's cause of action or (2) to establish his affirmative defense to the plaintiff's cause of action as a matter of law. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995); *Casso v. Brand,* 776 S.W.2d 551, 556 (Tex. 1989); *Nixon,* 690 S.W.2d at 548–49; *Miller v. LandAmerica Lawyers Title of El Paso*, 362 S.W.3d 842, 845 (Tex.App. – El Paso 2012, no pet.).

*Constitutionality of the Ordinance*

When reviewing the validity of a city ordinance, we presume the ordinance is valid. *City of Brookside Village v. Comeau*, 633 S.W.2d 790, 792 (Tex. 1982); *Ex parte Woodall,* 154 S.W.3d 698, 701 (Tex.App. – El Paso 2004, pet. ref'd). A party attacking an ordinance bears an extraordinary burden to show "that no conclusive or even controversial or issuable fact or condition existed" which would authorize the municipality's passage of the ordinance. *Comeau*, 633 S.W.2d at 792–93. If reasonable minds may differ regarding whether a particular ordinance has a substantial relationship to the public health, safety, morals, or general welfare, no clear abuse of discretion is shown and the ordinance must stand as a valid exercise of the City's police power. *See Quick v. City of Austin,* 7 S.W.3d 109, 117 (Tex. 1998). If the evidence reveals an issuable fact in this respect, the ordinance must stand. *Id.*

6

In its summary-judgment motion, the City countered Foster's claims that the ordinance is unconstitutional by presenting a defensive claim that the ordinance is constitutional in its entirety when scrutinized under the United States Supreme Court's analysis in *United States v. O'Brien*, 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968).[7]   The City renews its contentions in this appeal.

In *United States v. O'Brien*, the United States Supreme Court established a four-pronged test for the purpose of determining whether a government regulation is justified and determined that a regulation does not impinge on First Amendment freedom of expression if: (1) the regulation is within the constitutional power of the government; (2) the regulation furthers an important or substantial governmental interest; (3) if the governmental interest is unrelated to the suppression of free expression; and (4) if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.  *Id*.; *Fantasy Ranch Inc. v. City of Arlington, Texas*, 459 F.3d 546, 554 (5th Cir. 2006).

 If the government's predominant purpose in enacting the regulation is related to the suppression of symbolic speech, we apply a strict level of scrutiny.  *Fantasy Ranch*, 459 F.3d at 554.  However, we apply an intermediate level of scrutiny where the government's predominate purpose is unrelated to the suppression of expression, that is, where the regulation is "'justified without reference to the content of the regulated speech' . . . ."  *Fantasy Ranch*, 459 F.3d at 554 (citations omitted).  When reviewing government regulation of sexually-oriented businesses, courts routinely employ intermediate scrutiny.  *Fantasy Ranch*, 459 F.3d at 555 (citations

---

[7] Claims by adult businesses that the ordinance regulating the time, place and manner of conduct of business violated their freedom of speech rights are determined under the same standard for both the United States and Texas Constitutions.   *Woodall v. City of El Paso*, 49 F.3d 1120 (5th Cir.), *cert. denied,* 516 U.S. 988, 116 S.Ct. 516, 133 L.Ed.2d 425 (1995).

omitted). Included among the sufficient governmental interests that justify content-neutral regulations are the prevention of harmful secondary effects and the protection of morals and public order. *See City of Erie v. Pap's A.M.*, 529 U.S. 277, 120 S.Ct. 1382, 1391-92, 1395-96, 146 L.Ed.2d 265 (2000); *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 566-69, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991) (plurality).

The City's ordinance asserts an interest in and is targeted to combatting the negative secondary effects of sexually-oriented businesses. Because the City's predominant purpose in enacting the ordinance is unrelated to the suppression of First Amendment expression, we find the ordinance to be content-neutral and subject to an intermediate degree of scrutiny. *Fantasy Ranch*, 459 F.3d at 554-58.

## Application of the O'Brien Test

Because the City's ordinance is content-neutral, we must apply the four-prong *O'Brien* test to determine whether it is a constitutional restriction on symbolic speech under the First Amendment. *Fantasy Ranch*, 459 F.3d at 558. We find that it is.

## Prong One

The enactment of the ordinance is clearly within the constitutional power of the City Council because the ordinance is directed at protecting the health and safety of its citizens, and the Supreme Court has recognized such effort as being squarely within a City's police powers. *City of Erie* 529 U.S. 277, 120 S.Ct. at 1395; *Fantasy Ranch*, 459 F.3d at 558. Thus, the City's ordinance satisfies the first prong of the *O'Brien* test. *O'Brien*, 391 U.S. at 377, 88 S.Ct. at 1679.

## Prong Two

The second prong of *O'Brien* encompasses two distinct questions: (1) whether there is a

8

substantial government interest; and (2) whether the regulation furthers that interest. *City of Erie*, 529 U.S. at 300, 120 S.Ct at 1396-97; *Fantasy Ranch*, 459 F.3d at 558. A challenge to either of these questions raises a question of evidence. *Fantasy Ranch*, 459 F.3d at 559. In making such evidentiary determinations, we apply the standard set forth by the Supreme Court in *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986), as later modified by *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 451, 122 S.Ct. 1728, 1743, 152 L.Ed.2d 670 (2002); *Fantasy Ranch*, 459 F.3d at 559.

Under the *Renton-Alameda* standard, "a [city] may rely on *any* evidence that is 'reasonably believed to be relevant' for demonstrating a connection between speech and a substantial, independent government interest." *Alameda Books*, 535 U.S. at 438, 122 S.Ct. at 1736 (plurality opinion); *Renton*, 475 U.S. at 51-52, 106 S.Ct. at 931 (emphasis added). Such evidence may include the experiences of other cities and detailed findings summarized in judicial opinions, but a city is not required under the First Amendment, prior to enacting its ordinance, "to conduct new studies or produce evidence independent of that already generated by other cities . . . ." *Renton*, 475 U.S. at 50-52, 106 S.Ct. at 930-31. A city's own findings and its reasonable belief that the experience of other jurisdictions is relevant to addressing the problem may provide a sufficient evidentiary basis to meet this standard. *City of Erie*, 529 U.S. at 297, 120 S.Ct at 1395. However, the Supreme Court has recognized that the character of this evidence need not be local. *Renton*, 475 U.S. at 50-52, 106 S.Ct. at 930-31; *Schleuter v. Fort Worth*, 947 S.W.2d 920, 926-27 (Tex.App. – Fort Worth 1997, pet. denied). Nor must secondary-effects evidence consist of empirical data or scientific studies. *City of Erie*, 529 U.S. at 300, 120 S.Ct. at 1397.

A city's evidence must fairly support its rationale. *Alameda Books*, 535 U.S. at 438, 122

S.Ct. at 1736. A city's rationale meets the *Renton-Alameda* standard "[i]f plaintiffs fail to cast direct doubt on this [city's] rationale, either by demonstrating that the [city's] evidence does not support its rationale or by furnishing evidence that disputes the [city's] factual findings . . . ." *Alameda Books*, 535 U.S. at 438-39, 122 S.Ct. at 1736, *citing City of Erie*, 529 U.S. at 298, 120 S.Ct. at 1395-96. When a plaintiff successfully casts doubt on a city's rationale, the municipality bears the burden of supplementing the record with evidence that will renew support for a theory that justifies the municipality's ordinance. *Alameda Books*, 535 U.S. at 439, 122 S.Ct. at 1736, *citing City of Erie*, 529 U.S. at 298-99, 120 S.Ct. at 1395-96.

The record on appeal contains evidence from the City's experts, Professors George Tita, Ph.D., and Richard McCleary, Ph.D, professors of criminology, who discuss and explain that the negative secondary effects of sexually-oriented businesses are well-established, such that there is a "statistically significant negative impact with respect to the location of a sexually oriented business and the surrounding community," in part, because an abundance of people solicit prostitution and drugs in relation to adult businesses. Foster countered this evidence with reports from Dr. Judith Lynne Hanna, whose expertise is in the field of dance, and Dr. Randy Fisher, who is a social psychologist, each of whom presented opinions critical of the analysis provided by the City's experts. In a jointly prepared report, the City's experts, Drs. Tita and McCleary, criticize the analyses in and methodology of Dr. Hanna's and Dr. Fisher's reports.

In addition to investigator affidavits reporting unsanitary conditions at more than eighteen sexually-oriented businesses in El Paso, Texas, in 2007, the legislative record presented to the El Paso City Counsel includes: (1) judicial cases identifying the negative secondary effects of sexually-oriented businesses and determining the constitutional status of regulations enacted to

10

address such effects; (2) summaries of key reports concerning the negative secondary consequences of sexually-oriented businesses; (3) at least twenty-one studies and reports from nineteen cities and the State of Minnesota regarding sexually-oriented businesses and their secondary effects; (4) the indictment, judgment, and verdict in an El Paso County case where an adult cabaret owner was convicted of operating a prostitution ring from her cabaret; (5) a 1986 El Paso, Texas report regarding the effects of adult entertainment businesses on neighborhoods; and (6) a print out of the April 23, 2007, presentation made to the El Paso City Council regarding the secondary effects of sexually-oriented businesses. Although not required to do so, the City took into consideration expert and local evidence in addition to all of the previously noted evidence. *Alameda*, 535 U.S. at 439, 122 S.Ct. at 1736. With this sufficient evidentiary basis, the El Paso City Council clearly identified within its ordinance the targeted negative secondary effects of sexually-oriented businesses. *See Fantasy Ranch*, 459 F.3d at 559.

Joining in the United States Supreme Court's recognition that the "City Council is in a better position than the Judiciary to gather and evaluate data on local problems," we find the City relied on legislative evidence reasonably believed to be relevant for demonstrating a connection between speech and a substantial, independent government interest upon which Foster has failed to cast direct doubt, and that the City's evidence fairly supports its rationale. *Alameda Books*, 535 U.S. at 438, 122 S.Ct. at 1736, *citing City of Erie*, 529 U.S. at 297-98, 120 S.Ct. at 1395-96; *Renton*, 475 U.S. at 51-52, 106 S.Ct. at 931. Prong Two of *O'Brien* is satisfied.

*Prong Three*

Under the third prong of *O'Brien,* the City's interest must be unrelated to the suppression of free expression. *O'Brien*, 391 U.S. 377, 88 S.Ct. at 1679; *Fantasy Ranch Inc.*, 459 F.3d at 554.

11

Because we have already determined that the City's interest is not related to the suppression of free expression, Prong Three of *O'Brien* is satisfied. *O'Brien*, 391 U.S. at 377, 88 S.Ct. at 1679; *Fantasy Ranch Inc.*, 459 F.3d at 554.

*Prong Four*

The fourth prong of *O'Brien* requires that the incidental restriction on alleged First Amendment freedoms be no greater than is essential to the furtherance of an important or substantial government interest. *O'Brien*, 391 U.S. at 377, 88 S.Ct. at 1679. To be well-tailored, an ordinance must effectively promote the government's stated interest while not infringing significantly upon the protected conduct. *2300, Inc. v. City of Arlington*, *Texas*, 888 S.W.2d 123, 128 (Tex.App. – Fort Worth 1994, no writ). As the City correctly asserted in its summary-judgment motion, Article I, Section 8 of the Texas Constitution provides no greater protection than the First Amendment right to freedom of expression. *Id*. at 127.

The El Paso ordinance does not prohibit expressive conduct but includes regulations requiring the licensing of sexually-oriented businesses, restricting operation of such businesses between the hours of 2 a.m. and 6 a.m., requiring illumination of the internal and external premises and line-of-sight requirements between employees and patrons, signage requirements, loitering restrictions, a provision prohibiting nudity, a requirement that employees who appear in a semi-nude condition maintain a distance of six feet from patrons while the employee is on an eighteen-inch stage, and restrictions barring persons under the age of 18 years from employment or patronage at such businesses.

We find the ordinance strives to target secondary effects while leaving substantially intact the quantity and accessibility of speech. *Alameda Books*, 122 S.Ct. at 1742. Moreover, the

ordinance's incidental restriction on First Amendment freedoms is no greater than is essential to the furtherance of the important or substantial government interest. *O'Brien*, 391 U.S. at 377, 88 S.Ct. at 1679. We conclude that the City's ordinance satisfies the fourth prong of *O'Brien*. Because the ordinance satisfies the four-prong *O'Brien* test, we find the City's ordinance is not a constitutional restriction on symbolic speech under the First Amendment. *Fantasy Ranch*, 459 F.3d at 558.

*Issues*

We now turn to Foster's summary-judgment based complaints. In Issue One, Foster complains that the trial court's grant of summary judgment was erroneous because the City failed to meet its summary-judgment burden of proof. In support of this issue, Foster first asserts that the City failed to establish as a matter of law that there was no genuine issue of material fact as to at least one essential element of each of Foster's claims as a matter of law and summary judgment was, thus, precluded. *See* TEX. R. CIV. P. 166a. Without direct or analogous citation to authority, Foster then asserts that a full evidentiary evaluation in a trial setting is required to determine the sufficiency and efficacy of the restrictions imposed by the ordinance.

Relying upon the Fifth Circuit's opinion in *Basiardanes v. City of Galveston*, 682 F.2d 1203, 1213-14 (5th Cir. 1982), Foster argues that mimicking other sexually-oriented business ordinances upheld as constitutional provides an insufficient basis for the City's purportedly conclusory assertion that its ordinance is valid under the rules of evidence and also contends that the City was required to establish the efficacy of the ordinance's restrictions.

First, Foster misrepresents the City's summary-judgment burden. When the validity of an ordinance is challenged, as here, summary judgment is appropriate where the justification for the

13

ordinance is even fairly debatable. *Baccus v. City of Dallas,* 450 S.W.2d 389, 391-92 (Tex.Civ.App. – Dallas 1970, writ ref'd n.r.e.) (summary judgment of valid ordinance proper).

We also find Foster's reliance upon the Fifth Circuit's opinion in *Basiardanes v. City of Galveston*, a case abrogated four years later by the Supreme Court in *City of Renton v. Playtime Theatres, Inc.*, to be misplaced. *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). In *Renton*, the Supreme Court determined that the Washington court of appeals erred in ruling that the City of Renton's ordinance addressing its zoning interests was enacted without benefit of the city conducting its own studies relating to Renton's particular problems and needs and that the city's justifications for its ordinance were "'conclusory and speculative.'" *Renton*, 475 U.S. at 50, 106 S.Ct. at 930-31 (internal citations omitted). The Supreme Court instead held that a city is entitled to rely on the experiences of other cities in enacting, in that case, an adult-theater zoning ordinance, and that the First Amendment does not require that a City conduct new studies or produce independent evidence before enacting content-neutral time, place, and manner regulations to address the undesirable secondary effects of sexually-oriented businesses "so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses." *Renton*, 475 U.S. at 51-52, 106 S.Ct. at 931.

Drawing upon the Supreme Court's reasoning in *Renton*, and Justice Kennedy's subsequent concurring opinion in *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 451, 122 S.Ct. 1728, 1743, 152 L.Ed.2d 670 (2002), the Fifth Circuit has more recently determined that courts are not empowered "to second-guess the empirical assessments of a legislative body, nor . . . . expected to submit such assessments to a jury for re-weighing . . . ." *Fantasy Ranch Inc.*, 459

14

F.3d at 561, *citing Renton*, 106 S.Ct. at 931 *and Alameda Books, Inc.* 122 S.Ct. at 1743 (Kennedy, J., concurring). Thus, Foster's argument that a full evidentiary trial is required fails under this authority.

Foster's assertion that the efficacy of the ordinance's restrictions must be determined at trial likewise fails. As part of its analysis in *Ben's Bar, Inc. v. Village of Somerset*, 316 F.3d 702, 721 (7th Cir. 2003), the Seventh Circuit, in addressing Justice Kennedy's concurring opinion and the Supreme Court's plurality opinion in *Alameda*, recognized that while a municipality's rationale must be premised upon the theory that its ordinance may reduce the costs of secondary effects, the municipality need not prove the efficacy of its rationale prior to implementation of the ordinance.

Foster generally asserts that the City's statements in support of its summary-judgment motion are nothing more than conclusory, and that the City's expert affidavits contain hearsay within hearsay and "are simply not sufficient to base a summary judgment upon" because his own experts established that "any researcher or legitimate social scientist" would admit that the City's expert reports are without scientific validity. Foster fails to identify any statement within the City's summary-judgment motion or supporting evidence which is conclusory or hearsay. Foster also fails to provide citation to any portion of the appellate record where such statements exist.[8] Thus, Foster's hearsay and conclusory-statement complaints are inadequately briefed. TEX. R. APP. P. 38.1(i); *see Valadez v. Avitia,* 238 S.W.3d 843, 845 (Tex.App. – El Paso 2007, no pet.) (an appellate court has no duty, or even right, to perform an independent review of the record and applicable law to determine if there was error).

Foster contends that the City circumvented the legal requirements of proving its

---

[8] The clerk's record contains more than 1,000 pages of documents.

summary-judgment motion with admissible evidence as would be required at trial, such as affidavits, depositions, interrogatories, and other discovery. Again, Foster does not specify the summary-judgment evidence about which he complains, does not set forth the reasons why that evidence is inadmissible under the rules of evidence, does not cite in his argument the rules of evidence which would bar such evidence, and does not cite or to any portion of the record where such offensive evidence may be found. TEX. R. APP. P. 38.1(i); *see Valadez,* 238 S.W.3d at 845. Issue One is overruled.

In Issue Two, Foster asserts that the trial court's summary judgment was erroneous because it allegedly "placed significance on the earlier decision" regarding Foster's request for a temporary restraining order. Without citing to the record, Foster asserts that the trial court's rejection of his attempts to obtain preliminary injunctive relief, and its conclusion that he could not demonstrate neither a probable right to the relief sought, nor a legally-cognizable injury should have had no impact on his right to a trial on the merits of his claims.

Foster fails to set forth a cogent argument with proper citation to the record and an analysis identifying how the trial court, in granting the City's motion for summary judgment, placed significance upon its previous denial of his request for a temporary restraining order or preliminary injunctive relief. Instead, Foster complains that "it is doubtful that any City legislator even looked at the over 1,600 pages" that comprise the record, that the record is deficient because it contains some studies that another jurisdiction deemed unreasonable to rely upon and were not relevant to local conditions, and that the record fails to show that the legislation has a remedial effect. Foster also complains that the City recruited an advocate who has assisted "scores of communities seeking to restrict sexually oriented businesses," instead of compiling local evidence.

16

An issue presented in an appellant's brief is sufficient if it directs the reviewing court's attention to the complained-of error but when a party fails to cite legal authority or provide a substantive analysis of the legal issue presented, the complaint is waived. *See* TEX. R. APP. P. 38.1(i); *Valadez,* 238 S.W.3d at 845. Because Foster provides no analysis regarding his complaints about the trial court's allegedly improper reliance upon its prior temporary-restraining order decision, we find that he has waived this issue. *Id.* We have resolved against Foster's contention that the City was required to show the ordinance's efficacy, and we need not address it again. Issue Two is overruled.

In Issue Three, Foster asserts two bases for challenging the trial court's grant of summary judgment. Foster first complains that the City failed to conclusively prove all elements of its defenses to Foster's constitutional challenges. Foster also argues that the summary-judgment evidence showed that genuine issues of material fact existed regarding the City's arguments.

Foster specifically contends that: (1) the City could not possibly disprove or prove such elements because of "the conflicting nature" of the expert-witness reports; (2) the City failed to provide the trial court "with a proper framework for the evaluation of constitutional challenges;" (3) it is "well-settled" that ordinances regulating adult entertainment are content based unless it is shown that the legislation is designed to target the secondary effects of adult businesses; (4) it is "ridiculous to automatically assume such restrictions will reduce crime or protect property values;" (5) the ordinance is a total ban on expressive nudity and of all persons convicted for certain offenses; (6) the ordinance cannot be shown to advance a governmental interest absent a trial; and (7) the content-neutrality construct is a "ridiculous fiction" and the "secondary effects" construct is a pretext that has "done violence to the First Amendment rights of affected individuals

17

since its inception."

Only one of these contentions, that the government's interest must be demonstrated at trial, is supported by citation to authority.   After acknowledging that *Renton* does not require the City to conduct new studies or produce evidence that is independent of other cities' evidence and studies as long as the evidence upon which the City relies is reasonably believed to be relevant to the problems that the City is attempting to address, Foster states, "This is where the dispute lies," and again proceeds to argue that the trial court should have required the City to prove "the validity of the legislative predicate" at trial under "appropriate evidentiary conditions."   Foster contends that "[n]umerous authorities also indicate the error of granting summary judgment in these types of contested proceedings," but fails to provide any citation to the "numerous" authorities in support of this proposition.

Foster does not cite to the record or provide any substantive analysis specific to the record or ordinance before us to demonstrate how the City failed to prove all elements of its defenses to his constitutional challenges or how the summary-judgment evidence showed that genuine issues of material fact exist.   *See* TEX. R. APP. P. 38.1(i); *Valadez,* 238 S.W.3d at 845.   Issue Three is overruled.

In Issue Four, Foster contends that the summary judgment in favor of the City was erroneous because the City's experts relied upon flawed and unreliable research methodology. Without citation to authority, Foster asserts that "summary judgment is not favored in adult entertainment cases."   Foster fails to discuss how the research methodology is flawed and instead notes that "it is simply not appropriate to gauge these factual disputes in a summary judgment." Foster cites a footnote passage from *Peek-A-Boo* quoting *Alameda Books* for the standard that the

government is required to "advance some basis to show that its regulation has the purpose and effect of suppressing secondary effects, while leaving the quantity and accessibility of speech substantially intact."  *Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County*, 337 F.3d 1251, 1267 n.15 (11th Cir. 2003), *quoting Alameda Books*, 122 S.Ct. at 1742. (Kennedy, J., concurring).

Foster asserts that the City's experts "admitted" the absence of evidence to show that similar legislation adopted in other jurisdictions had any beneficial impact on the alleged problems the legislation was designed to prevent.   Based upon recitations in his brief, Foster contends that the legislative and court records present no evidence to show any connection between the ordinance and the secondary effects it was enacted to address, that there is grave doubt that the City's reliance upon "the studies and cases referenced" in the ordinance is reasonable, and that the ordinance is neither narrowly tailored nor serves a substantial governmental interest.

Foster has failed to address the flawed and unreliable research methodology argument upon which he bases his fourth issue.   As we have recognized, a City is not required to conduct new studies nor must it produce evidence that is independent of that produced by other cities. *Renton*, 475 U.S. at 51, 106 S.Ct. at 931; *Alameda Books, Inc.*, 535 U.S. at 438-39, 122 S.Ct. at 1736; *City of Erie*, 529 U.S. at 297-98, 120 S.Ct. at 1395.   A city is permitted to rely upon any evidence that is reasonably believed to be relevant to its goal of preventing the negative secondary effects of sexually-oriented businesses and is not required to pre-prove the efficacy of legislation designed to fulfill that purpose.  *Alameda Books*, 535 U.S. at 438, 122 S.Ct. at 1736; *see also World Wide Video of Washington, Inc. v. City of Spokane*, 368 F.3d 1186, 1195-96 (9th Cir. 2004) (both anecdotal evidence and reported experience may provide a legitimate basis for finding negative secondary effects); *Daytona Grand, Inc. v. City of Daytona* Beach, 490 F.3d 860, 880

(11th Cir. 2007) (a city may, but is not required, to justify its ordinances with scientific studies or empirical evidence).

The record contains evidence the City may have reasonably believed to be relevant to its goal of preventing the negative secondary of the businesses through the regulations adopted in its ordinance. No less than three of the studies relied upon by the City were aimed at sexually-oriented businesses' operations in urban areas.

Before passing an ordinance that required a line-of-sight for video booths in Phoenix, the municipality's study concluded that sex crimes occurred six times as frequently in areas with adult businesses as compared with other areas, and that most of those crimes occurred at the adult establishment. *See Ellwest Stereo Theatres, Inc. v. Wenner*, 681 F.2d 1243, 1245 (9th Cir. 1982) (upholding ordinance requiring that all viewing areas must be visible from a continuous main aisle and cannot be obscured by a curtain, door, wall, or other enclosure).

Similarly, after its study reflected prostitution and blatant open sexual contact between people with complete anonymity in adult bookstores, as well as public lewdness, narcotics-related offenses, and criminal indecent exposure in adult cabarets, the City of Houston passed an ordinance regulating lighting and visibility, and banning private viewing areas. *See N.W. Enterprises Inc. v. City of Houston*, 352 F.3d 162, 172 (5th Cir. 2003) (upholding ordinance's provisions on interior lighting, design, and layout).

Before enacting an ordinance regulating adult businesses' hours of operation, the City of Dallas learned from its study that adult businesses experience higher crime in the area, loitering by unsavory people, including prostitutes, and parking problems, noise, disturbances that often turn violent, and an increase in the occurrence of sexual offenses, assaults, and unruly behavior both

20

inside and outside of the establishments, requiring police presence.

Although not required to consider local evidence, the City did so before enacting the ordinance. Investigator Raul Acosta investigated, obtained, and presented evidence of unsanitary conditions at a number of El Paso sexually-oriented businesses in El Paso. By affidavit, Acosta stated that he had examined with a blacklight the doors and walls of private booths at various adult establishments, where he observed within the booths stains consistent with acid phosphate, an enzyme that is present in human semen, and observed soiled tissues outside the premises, on interior floors, and in containers. Acosta explained that when he entered booths and bathrooms at some of the establishments, other patrons watched him and attempted to enter the area that Acosta was occupying, even if the area displayed a sign or light indicating that the booth was occupied. When Acosta visited several adult cabarets, dancers offered and agreed to perform sexual acts in exchange for payment.

We find the City reasonably relied on relevant studies, its on-going experience, and public comment when adopting the new sexually-oriented business ordinance. *See Renton*, 475 U.S. at 51-52, 106 S.Ct. at 930-31 (municipality may rely on any evidence "reasonably believed to be relevant"); *Fantasy Ranch Inc.*, 459 F.3d at 559 (noting that city relied on studies and numerous court opinions "all of which demonstrate a connection between dancer-patron touching and unsavory secondary effects"). That evidence fully supported the City's rationale for regulating sexually-oriented businesses and was legally sufficient to support the City's adoption of the ordinance. Accordingly, we find that there was no genuine issue of material fact regarding whether the City had met its evidentiary burden to demonstrate that the ordinance was necessary to combat secondary effects of Appellants' adult entertainment establishments. Issue Four is

21

overruled.

In Issue Five, Foster contends the trial court erred in denying his motion to strike the opinions of the City's experts, Drs. Richard McCleary and George E. Tita, "pursuant to Rule 702 of the Texas Rules of Evidence, *Daubert v. Merrell Dow Pharms., Inc.* . . . and its progeny, and *E.I. du Pont de Nemours & Co. v. Robinson* . . . and its progeny, and other Texas state court authorities."[9]  *See Daubert v. Merrell Dow Pharms., Inc.* 509 U.S. 579, 590-92, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 553-56 (Tex. 1995).   He likewise asserts that the arguments set forth in his motion to strike such opinions also support his "position that summary judgment was totally improper . . . ."

Foster bases his contentions upon the assertion that the City's experts relied on flawed and unreliable research methodology to reach the conclusion that Foster's business causes secondary effects, and asserts that they raise a genuine issue of material fact.   Foster focuses primarily upon the efficacy of the legislation in addressing the negative secondary effects of sexually-oriented businesses, and challenges the admissibility of the experts' testimony because they allegedly conceded that the ordinance's regulations had not been shown to be effective at reducing alleged disproportionate secondary effects.   For the reasons set forth in Issue Four as well as those that follow, we disagree.

In addressing this issue, we are faced with a recitation of expert testimony for which there is no citation to the record.   *See* TEX. R. APP. P. 38.1(i); *Valadez,* 238 S.W.3d at 845.   Also, Foster argues the City must address disproportionate secondary effects rather than negative secondary effects.   As previously noted, the City was permitted to rely on evidence reasonably

---

[9]  Although Foster cites these cases, he fails to provide citation to the portions of those cases that allegedly support his contentions at trial and on appeal.

22

believed to be relevant to the goal of preventing the negative secondary effects of sexually-oriented businesses but was not required to specifically produce or rely upon expert-witness testimony. *Renton*, 475 U.S. at 51-52, 106 S.Ct. at 931. Assuming, without deciding, that the City's expert witnesses' testimony should have been excluded under *Daubert* and *Robinson*, "the relevant 'material fact' that must be placed at issue is whether the ordinance is supported by evidence that can be 'reasonably believed to be relevant to the problem.'" *Fantasy Ranch*, 459 F.3d at 561, *citing Renton*, 475 U.S. at 51-52, 106 S.Ct. at 931 (emphasis omitted); *N.W. Enterprises*, 352 F.3d at 180; *Alameda Books*, 535 U.S. at 451-52, 122 S.Ct. at 1743 (Kennedy, J., concurring); *see also Daubert.* 509 U.S. at 590-92, 113 S.Ct. at 2795-96; *Robinson*, 923 S.W.2d at 553-56. We have found that it is.

Foster has failed to demonstrate that the trial court erred in denying his motion to strike the opinions of Drs. McCleary and Tita for their reliance upon allegedly flawed and unreliable research methodology. Issue Five is overruled.

In Issue Six, Foster complains that the trial court's grant of summary judgment on his request for declaratory relief was error. Foster complains that the City: (1) did not set forth the burden of proof for a declaratory judgment; (2) failed to address which essential element of Foster's claims it was disproving; and (3) instead of addressing Foster's claims, chose to seek summary judgment based on its pleaded affirmative defenses and other pleas. Noting that a declaratory judgment is proper where a justiciable controversy exists regarding the rights and status of parties and if the declaration will resolve the controversy, Foster contends that a justiciable controversy exists because the City adopted arbitrary and overreaching regulations that were based upon flawed expert theories. *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995). According to Foster, the requested declaration would have resolved the controversy

23

because the trial court could have declared the rights and obligations of the parties and committed error when it failed to do so.

The trial court considered the City's motion for summary judgment which set forth the standards and elements for challenging each of Foster's constitutional claims, and the trial court found, as we have, that the ordinance survives constitutional scrutiny. Upon adjudication of those claims, no justiciable controversy existed, and the trial court correctly denied Foster's request for declaratory relief. *Beadle*, 907 S.W.2d at 467 (declaratory judgment is appropriate only if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought); *Schecter v. Wildwood Developers, L.L.C.*, 214 S.W.3d 117, 121 (Tex.App. – El Paso 2006, no pet.). Because the trial court did not err, Issue Six is overruled.

In Issue Seven, Foster argues that the trial court erred in granting summary judgment because the ordinance is unconstitutionally overbroad and constitutes a prior restraint. As we have already concluded that the ordinance is constitutional under *O'Brien* and is neither unconstitutionally vague or overbroad, we address Foster's prior-restraint complaint.

The City argues that Foster has waived this issue because he failed to present or secure a ruling thereon in the summary-judgment proceedings. The Rules of Civil Procedure provide that issues not expressly presented to the trial court by written motion, answer, or other response shall not be considered on appeal as grounds for reversal. TEX. R. CIV. P. 166a(c). Foster did not file his own motion for summary judgment and in his summary-judgment response, Foster states that it is premature to address prior restraint until an evidentiary hearing is conducted. Because these complaints as raised on appeal were not brought to the trial court's attention, we cannot consider them. TEX. R. CIV. P. 166a(c). Significantly, because the ordinance satisfies the *O'Brien* test, it is constitutionally sound. *O'Brien*, 391 U.S. at 377, 88 S.Ct. at 1679. Issue Seven is overruled.

**CONCLUSION**

As Foster has failed to establish that the trial court erred in granting summary judgment in favor of the City and in denying his motion to strike the City's expert witnesses, the trial court's judgment is affirmed.


GUADALUPE RIVERA, Justice

February 20, 2013

Before McClure, C.J., Rivera, and Antcliff, JJ.
Antcliff, J., not participating