ACCEPTED
03-15-00262-CV
7895959
THIRD COURT OF APPEALS
AUSTIN, TEXAS
11/18/2015 6:16:46 PM
JEFFREY D. KYLE
CLERK

# No. 3-15-00262-CV

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
11/18/2015 6:16:46 PM
JEFFREY D. KYLE
Clerk

*In the Court of Appeals*
*Third District of Texas — Austin*

**TEXAS ASSOCIATION OF ACUPUNCTURE
AND ORIENTAL MEDICINE,**

*Appellant,*

**v.**

**TEXAS BOARD OF CHIROPRACTIC EXAMINERS AND YVETTE
YARBROUGH, EXECUTIVE DIRECTOR IN HER OFFICIAL CAPACITY,**
*Appellees.*

*On Appeal from 201st District Court, Travis County, Texas*
*Cause No. D-1-GN-14-000355*

# REPLY BRIEF OF APPELLANT
# TEXAS ASSOCIATION OF ACUPUNCTURE
# AND ORIENTAL MEDICINE

Craig T. Enoch
Melissa A. Lorber
Shelby O'Brien
**ENOCH KEVER PLLC**
600 Congress Avenue, Suite 2800
Austin, Texas 78701
(512) 615-1200 / (512) 615-1198 fax

***Attorneys for Appellant***

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

INDEX OF AUTHORITIES.................................................................................. iii

INTRODUCTION ............................................................................................1

ARGUMENT ...................................................................................................2

I.  Because acupuncture is outside the statutory scope of chiropractic, the Chiropractic Board's rules authorizing chiropractors to practice acupuncture without a license from the Acupuncture Board are invalid. .......................................................................................................2

    A.  A two-word addition to the definition of "acupuncture" in the Acupuncture Chapter did not create an exemption for chiropractors from the licensing requirements of the Acupuncture Chapter.........................................................................2

    B.  If the Legislature "indirectly" attempted to exempt chiropractors from the licensing requirements of the Acupuncture Chapter, the attempt failed. ............................................5

    C.  Even if the amendment to the Acupuncture Chapter's definition of acupuncture resulted in surplusage, the Court should decline to adopt the Chiropractic Board's interpretation because it contravenes the express language of the Chiropractic Chapter and leads to an absurd result. ...............................................8

    D.  Though there is sometimes overlap among activities two regulated professions can perform, an amendment to the definition of acupuncture in the Acupuncture Chapter did not result in chiropractors being authorized to engage in the entirely separate profession of acupuncture. .....................................11

    E.  The cases relied on by the Chiropractic Board do not support that the two-word amendment to the definition of acupuncture created an exemption from the requirements of the Acupuncture Chapter for chiropractors. .................................................13

    F.  Legislative history is irrelevant to unambiguous statutes and, even if considered, does not support the Chiropractic Board's position. .....................................................................18

G. The Court should decline to read the Acupuncture Chapter's scope of practice and the Chiropractic Chapter's scope of practice in pari materia. ........................................................21

H. The Acupuncture Association's statutory construction argument is not dependent on factual safety issues. ...............................................25

II. The statutory scheme purportedly authorizing chiropractors to practice acupuncture with significantly less education and training in acupuncture than licensed acupuncturists violates Texas Constitution, Article XVI, Section 31. ...............................................................27

III. The legislation that purportedly authorized chiropractors to practice acupuncture violates the one-subject rule in Texas Constitution, Article III, Section 35(a). ...............................................................30

IV. The Chiropractic Board has waived any argument regarding its laches defense. ...............................................................32

PRAYER ...............................................................33

CERTIFICATE OF COMPLIANCE ...............................................................35

CERTIFICATE OF SERVICE ...............................................................35

# INDEX OF AUTHORITIES

**CASES**

*Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*
209 S.W.3d 644 (Tex. 2006) ..............................................................................18

*Andrews v. Ballard*
498 F. Supp. 1038 (S.D. Tex. 1980) ..............................................................25, 29

*Brooks v. Tex. Med. Bd.*
No. 03-14-00239-CV, 2015 WL 3827327 (Tex. App.—Austin
June 18, 2015, no pet.) ......................................................................................25

*Brookshire v. Houston Indep. Sch. Dist.*
508 S.W.2d 675 (Tex. Civ. App.—Houston [14th Dist.] 1974, no writ) ..........24

*Chickasaw Nation v. U.S.*
534 U.S. 84 (2001) ..............................................................................................9

*City of Houston v. Clark*
197 S.W.3d 314 (Tex. 2006) ..............................................................................26

*City of Rockwall v. Hughes*
246 S.W.3d 621 (Tex. 2008) ..............................................................................10

*City of Round Rock v. Rodriguez*
399 S.W.3d 130 (Tex. 2013) ..............................................................................22

*City of San Antonio v. Tex. Att'y Gen.*
851 S.W.2d 946 (Tex. App.—Austin 1993, writ denied) ..................................21

*Coker v. Coker*
650 S.W.2d 391 (Tex. 1983) ..............................................................................27

*Commonwealth Dep't of State v. Schatzberg*
371 A.2d 544 (Pa. Commw. Ct. 1977) ................................................................5

*DLB Architects, P.C. v. Weaver*
305 S.W.3d 407 (Tex. App—Dallas 2010, pet denied) .....................................23

*Entergy Gulf States, Inc. v. Summers*
282 S.W.3d 433 (Tex. 2009) ...........................................................................3, 18

*Fed. Deposit Ins. Corp. v. Lenk*
361 S.W.3d 602 (Tex. 2012) ........................................................................32

*Foster v. City of El Paso*
396 S.W.3d 244 (Tex. App.—El Paso 2013, no pet.) ..................................33

*Greater Houston P'ship v. Paxton*
468 S.W.3d 51 (Tex. 2015)........................................................................9, 22

*Harlingen Family Dentistry, P.C. v. Tex. Health & Human Servs. Comm'n*
452 S.W.3d 479 (Tex. App.—Austin Nov. 25, 2014, pet. dism'd)...................14

*In re Blair*
408 S.W.3d 843 (Tex. 2013) ...................................................................17, 26

*In re Doe 3*
19 S.W.3d 300 (Tex. 2000)...........................................................................23

*In re JMR*
149 S.W.3d 289 (Tex. App.—Austin 2004, no pet.).......................................24

*Jessen Assocs., Inc. v. Bullock*
531 S.W.2d 593 (Tex. 1976) ........................................................................32

*Kallinen v. City of Houston*
462 S.W.3d 25 (Tex. 2015)..............................................................................8

*Kia Motors Corp. v. Ruiz*
432 S.W.3d 865 (Tex. 2014) ...........................................................................5

*King v. Burwell*
135 S. Ct. 2480 (2015)....................................................................................9

*Lamie v. U.S. Trustee*
540 U.S. 526 (2004).........................................................................................9

*Lenhad v. Butler*
745 S.W.2d 101 (Tex. App.—Fort Worth 1988, writ denied) ........................23

*Matagorda Cnty. Appraisal Dist. v. Coastal Liquids Partners, L.P.*
165 S.W.3d 329 (Tex. 2005) ........................................................................24

*Mid-Century Ins. Co. of Tex. v. Kidd*
997 S.W.2d 265 (Tex. 1999) ...........................................................................4

iv

*Molinet v. Kimbrell*
356 S.W.3d 407 (Tex. 2011) ...............................................................23

*Nat'l Media Corp. v. City of Austin*
No. 03-12-00188-CV, 2014 WL 4364815 (Tex. App.—Austin
Aug. 27, 2014, no pet.) ......................................................................24

*Neasbitt v. Warren*
22 S.W.3d 107 (Tex. App.—Fort Worth 2000, no pet.)....................23

*Ojo v. Farmers Grp., Inc.*
356 S.W.3d 421 (Tex. 2011) ...............................................................19

*Robinson v. Crown Cork & Seal Co., Inc.*
335 S.W.3d 126 (Tex. 2010) ...............................................................19

*Rogers v. Tex. State Bd. of Architectural Examn'rs*
390 S.W.3d 377 (Tex. App.—Austin 2011, no pet.)........................... 13-14, 18

*Schlichting v. Tex. State Bd. of Med. Examn'rs*
310 S.W.2d 557 (Tex. 1958) ......................................................... 29-30

*Teem v. State*
183 S.W. 1144 (Tex. Crim. App. 1916) .............................................28

*Tex. Ass'n of Psychological Assocs. v. Tex. State Bd. of Examn'rs of Psychologists*
439 S.W.3d 597 (Tex. App.—Austin 2014, no pet.)...........................15, 26

*Tex. Bd. of Chiropractic Exam'rs v. Tex. Med. Ass'n*
375 S.W.3d 464.......................................................... 5, 15-16, 18, 20, 22

*Tex. Lottery Comm'n v. First State Bank of DeQueen*
325 S.W.3d 628 (Tex. 2010) ...........................................................4, 11

*Tex. Orthopaedic Ass'n v. Tex. State Bd. of Podiatric Exam'rs*
254 S.W.3d 714 (Tex. App.—Austin 2008, pet. denied) ...................29

*Tex. State Bd. of Chiropractic Exam'rs v. Abbott*
391 S.W.3d 343 (Tex. App.—Austin 2013, no pet.)...........................24

*TGN-NOPEC Geophysical Co. v. Combs*
340 S.W.3d 432 (Tex. 2011) ...............................................................4

*Thompson v. Tex. State Bd. of Med. Exam'rs*
    570 S.W.2d 123 (Tex. Civ. App.—Tyler 1978, writ ref'd n.r.e.)....................7, 28

*Transp. Ins. Co. v. Maksyn*
    580 S.W.2d 334 (Tex. 1979) ...................................................................6

*W. Orange-Cove Consol. Indep. Sch. Dist. v. Alanis*
    107 S.W.3d 558 (Tex. 2003) ...............................................................32

**RULES, STATUTES AND CONSTITUTIONAL PROVISIONS**

22 TEX. ADMIN. CODE § 78.13 ...............................................................16, 33

22 TEX. ADMIN. CODE § 78.14 ...............................................................10, 33

22 TEX. ADMIN. CODE § 183.2 ......................................................................30

22 TEX. ADMIN. CODE § 183.4 ......................................................................30

TEX. CONST., art. III, § 35 ..........................................................................30

TEX. CONST., art. XVI, § 31 ....................................................................27, 30

TEX. GOV'T CODE § 311.021 ..........................................................................4

TEX. GOV'T CODE § 323.007 ..........................................................................7

TEX. GOV'T CODE § 325.015 ........................................................................31

TEX. OCC. CODE § 151.002 ..........................................................................29

TEX. OCC. CODE § 151.052 ................................................................ 28-29, 31

TEX. OCC. CODE §157.051 ...........................................................................23

TEX. OCC. CODE §162.052 ...........................................................................23

TEX. OCC. CODE, ch. 201 ..............................................................................1

TEX. OCC. CODE § 201.002 .................................................................... 3-4, 29

TEX. OCC. CODE § 201.151 ...........................................................................22

TEX. OCC. CODE § 201.152 ...........................................................................22

TEX. OCC. CODE, ch. 205 ................................................................1

TEX. OCC. CODE § 205.001 ........................................................4, 29

TEX. OCC. CODE § 205.003 ..........................................................3, 5

TEX. OCC. CODE § 205.101 .............................................................29

TEX. OCC. CODE § 205.201 ...............................................................6

TEX. OCC. CODE § 205.203 ........................................................25, 30

TEX. OCC. CODE § 205.206 ........................................................25, 30

TEX. OCC. CODE § 205.255.............................................................30

TEX. OCC. CODE § 1051.601 ...........................................................13

TEX. R. APP. P. 38.1 .......................................................................33

TEX. R. APP. P. 43.2 .......................................................................27

TEX. R. APP. P. 43.3 .......................................................................27

TEX. R. CIV. P. 166a .......................................................................32

## OTHER AUTHORITIES

Act of May 29, 1997, 75th Leg., R.S. ch. 1170
   (Tex. S.B. 361)................................. 2, 4, 6-9, 12, 18-20, 30-31, 33

Tex. Atty. Gen. Op. DM-415 (1996) ..................................................7

Tex. S.B. 1601, 82nd Leg., R.S. (2011)................................................4

## INTRODUCTION

The Chiropractic Board's[1] response crystalizes the infirmity of its argument. The Board claims that a two-word addition to the definition of acupuncture in the Acupuncture Chapter[2] —that made no mention of chiropractic or chiropractors—fundamentally changed the law so as to not only allow chiropractors to practice acupuncture, contrary to the Chiropractic Chapter,[3] but also to exempt chiropractors from the licensing requirements of the Acupuncture Chapter. This is even though (1) the legislation that made the addition was the Acupuncture Board's[4] (and not the Chiropractic Board's) sunset bill; (2) the Chiropractic Chapter was not amended to authorize chiropractors to practice acupuncture; and (3) nothing in the Acupuncture Chapter was amended to exempt chiropractors from the education, licensing, and oversight requirements of that chapter. The result is that chiropractors are able to practice acupuncture with no oversight by any regulatory board since the Chiropractic Board does not regulate the practice of acupuncture by its licensees.

---

[1] The Chiropractic Board refers to the Texas Board of Chiropractic Examiners and Yvette Yarbrough, Executive Director in her Official Capacity.

[2] The Acupuncture Chapter is Texas Occupations Code, Chapter 205.

[3] The Chiropractic Chapter is Texas Occupations Code, Chapter 201.

[4] The Acupuncture Board refers to the Texas State Board of Acupuncture Examiners.

1

The Chiropractic Board's rationale requires an illogical leap. Certainly, the terms "nonincisive, nonsurgical" are found in both the Chiropractic and Acupuncture Chapters. But this Court should refuse to take the leap advocated by the Board. By its express language, the Chiropractic Chapter's scope of practice provision does not authorize chiropractors to practice acupuncture. And the definition of acupuncture in the Acupuncture Chapter does not exempt chiropractors from licensure under that chapter. The Court should reverse the trial court's judgment and render judgment for the Acupuncture Association.[5]

## **ARGUMENT**

### **I.**

**Because acupuncture is outside the statutory scope of chiropractic, the Chiropractic Board's rules authorizing chiropractors to practice acupuncture without a license from the Acupuncture Board are invalid.**

**A.    A two-word addition to the definition of "acupuncture" in the Acupuncture Chapter did not create an exemption for chiropractors from the licensing requirements of the Acupuncture Chapter.**

The Chiropractic Board's primary argument is not that the Chiropractic Chapter authorizes chiropractors to practice acupuncture. It is instead that Senate Bill 361—which inserted the phrase "nonincisive, nonsurgical" into the definition of acupuncture in the Acupuncture Chapter—created an exemption for

---

[5] Acupuncture Association refers to the Texas Association of Acupuncture and Oriental Medicine.

2

chiropractors from the Acupuncture Chapter's licensing requirements. This argument is unsupportable.

The Acupuncture Chapter does not include any exemption for chiropractors—the only exemption is for professionals acting within the scope of their own licenses. TEX. OCC. CODE § 205.003(a); *see also, e.g.*, *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 440 (Tex. 2009). Specifically, the Acupuncture Chapter provides that "[t]his chapter does not apply to a health care professional licensed *under another statute* of this state and *acting within the scope of the license*." TEX. OCC. CODE § 205.003(a) (emphasis added). The Acupuncture Chapter is not "another statute." *Id.* Consequently, the only way a chiropractor is exempt from the requirements of the Acupuncture Chapter is if the chiropractor is practicing within the scope of *chiropractic* as defined in the chiropractor's licensing statute: *the Chiropractic Chapter.* The Chiropractic Chapter does not permit chiropractors to perform acupuncture.

Under the express terms of the Chiropractic Chapter, chiropractors are broadly prohibited from performing procedures involving needles, save for diagnostic blood draws, and are limited to treating the musculoskeletal portion of the body. *See id.* §§ 201.002, .003(a). The Chiropractic Chapter unambiguously defines incisive as making an incision into *any* tissue or organ by *any* person or implement, with only a narrow exception for diagnostic blood draws. *Id.*

3

§ 201.002(a)(3). A needle is an "implement" used to make an incision into the skin, which by definition is a "tissue" and "organ." *Id.* And by virtue of the single exception for needle-use for diagnostic blood draws, the chapter makes clear that all needles are "incisive." *See TGN-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011); *Mid-Century Ins. Co. of Tex. v. Kidd*, 997 S.W.2d 265, 273 (Tex. 1999).[6]

The Chiropractic Chapter does not include a provision authorizing chiropractors to engage in acupuncture, despite attempts by some legislators to do so in early versions of Senate Bill 361 and in subsequent legislation.[7] The Chiropractic Chapter does not list acupuncture as an exception to the prohibition on needle use. It does not refer to any portion of the Acupuncture Chapter: it not only does not mention the definition of acupuncture, it does not mention acupuncture at all. Acupuncture—which by its statutory definition requires the use of needles—does not fall within the statutory scope of chiropractic. TEX. OCC.

---

[6] The Board's reliance on the Code Construction Act is misplaced. First, canons of construction are only available if a statute is ambiguous. *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 637 (Tex. 2010). There is no ambiguity here. Second, even if available, canons of construction belie the Chiropractic Board's interpretation. The Code Construction Act provides that it should be presumed that a just and reasonable result is intended, a result feasible of execution is intended, and public interest is favored over private interest. TEX. GOV'T CODE § 311.021(3)-(5). These admonishments compel the Court to not interpret "nonincisive, nonsurgical" in the Acupuncture Chapter's definition of acupuncture as creating an exemption for chiropractors from Acupuncture Board licensure.

[7] CR 512, 515-16; Tex. S.B. 1601, 82nd Leg., R.S. (2011).

CODE § 205.001(2); *see also, e.g., Commonwealth Dep't of State v. Schatzberg*, 371 A.2d 544, 546-47 (Pa. Commw. Ct. 1977) (holding that acupuncture is not within the scope of chiropractic because they are not the same and do not treat the same conditions). Indeed, the Board admits that the amendment to the Acupuncture Chapter "was not an amendment that changed the scope of practice of chiropractic."[8] The Board may not rely on the Acupuncture Chapter's exemption for healthcare professionals acting within the scope of their license when the Chiropractic Board's scope of practice does not include acupuncture. TEX. OCC. CODE § 205.003(a).

**B.    If the Legislature "indirectly" attempted to exempt chiropractors from the licensing requirements of the Acupuncture Chapter, the attempt failed.**

The Chiropractic Board's argument that it was permissible for the Legislature to "indirectly" allow chiropractors to practice acupuncture without a license because it purportedly could have done so directly fails for several reasons. First, statutes are read according to their express terms, *Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865, 869 (Tex. 2014), and the scope of the practice of chiropractic is found in the Chiropractic Chapter, not the Acupuncture Chapter. *See Tex. Bd. of Chiropractic Exam'rs v. Tex. Med. Ass'n,* 375 S.W.3d 464. 467 (Tex. App.—

---

[8] Chiropractic Board's Brief, at 40.

Austin 2012, pet. denied). Because the scope of chiropractic is found in the Chiropractic Chapter, the amendment to the definition of acupuncture in the Acupuncture Chapter did nothing to enlarge the scope of chiropractic. Further, contrary to the Board's assertion that the definition of acupuncture in the Acupuncture Chapter is not limited to licensed acupuncturists, the Acupuncture Chapter applies to the licensing and regulation of acupuncturists by its terms. *See* TEX. OCC. CODE § 205.201. Thus, this purported "indirect" attempt to amend the scope of chiropractic failed.

Second, the Board ignores that the Legislature could ***not*** directly authorize chiropractors to practice acupuncture in Senate Bill 361. When it attempted to do so, those amendments were struck on germaneness grounds.[9]

Third, the Legislature attempted during the course of Senate Bill 361's enactment—and failed—to directly amend the Chiropractic Chapter to authorize chiropractors to practice acupuncture.[10] The fact that a "direct" amendment was ***not*** enacted militates against interpreting the so-called "indirect" amendment as accomplishing what was rejected. *See Transp. Ins. Co. v. Maksyn*, 580 S.W.2d 334,

---

[9] CR 515-16. Similarly, as explained in Sections II and III, *infra*, if the amendment is read as allowing chiropractors to practice acupuncture, it violates the Texas Constitution's one-subject rule and the Texas Constitution's prohibition against the Legislature favoring one school of medicine over another.

[10] CR 512, 515-16

338 (Tex. 1979). Indeed, members of the Legislature acknowledged during debate that amending the Acupuncture Chapter's definition of acupuncture would not accomplish the purpose of allowing chiropractors to practice acupuncture without an Acupuncture Board license.[11] To accomplish that purpose, it would have been necessary to amend the Chiropractic Chapter.

Finally, to interpret the definition of acupuncture as the Chiropractic Board proposes defeats the Legislature's goal for Texas statutes—to make them "more accessible, understandable, and usable." TEX. GOV'T CODE § 323.007(a). And interpreting the effect of Senate Bill 361 in the manner urged by the Board also defeats the purpose of the State's regulation of the practice of medicine, which is to "provide for the general health and welfare of its citizens." *Thompson v. Tex. State Bd. of Med. Exam'rs*, 570 S.W.2d 123, 128 (Tex. Civ. App.—Tyler 1978, writ ref'd n.r.e.). As the Attorney General observed (before it later improperly reversed course and concluded that chiropractors could practice acupuncture by virtue of Senate Bill 361): "We believe the legislature, in the interest of the public health, safety, and welfare, intended to except from the training and examination requirements only health care professionals whose licenses *clearly* encompass the practice of acupuncture." Tex. Atty. Gen. Op. DM-415 (1996) (emphasis added)

---

[11] CR 478-80, 483.

7

(internal citations omitted). This Court should not condone the Board's latest attempt to promote its own profession over following the law and protecting patients.[12] This is especially so since the Board does not oversee the practice of acupuncture by its licensees.[13]

**C.    Even if the amendment to the Acupuncture Chapter's definition of acupuncture resulted in surplusage, the Court should decline to adopt the Chiropractic Board's interpretation because it contravenes the express language of the Chiropractic Chapter and leads to an absurd result.**

The Court should reject the Chiropractic Board's argument that the Acupuncture Association's interpretation of the definition of acupuncture renders the term "nonincisive, nonsurgical" meaningless. First, it is possible to read the phrase in a manner that does not render it meaningless. Because Senate Bill 361 amended the definition of acupuncture in the Acupuncture Chapter and was part of the Acupuncture Board's sunset bill, one interpretation is that the amendment resulted in a limitation on the practice of acupuncture by acupuncturists.

Second, it is sometimes unavoidable for statutory language, in practical effect, to be meaningless. *See Kallinen v. City of Houston*, 462 S.W.3d 25, 28 (Tex. 2015) (a court should "not treat any statutory language as surplusage *if possible*"). As the United States Supreme Court has acknowledged, "our

---

[12] CR 577; *see also* Acupuncture Association's Brief, at 7-9.

[13] CR 249-51, 253, 284, 577.

8

preference to avoid surplusage is not absolute," *Lamie v. U.S. Trustee*, 540 U.S. 526, 536 (2004), and the preference "is sometimes offset by the canon that permits a court to reject words as surplusage … if repugnant to the rest of the statute," *Chickasaw Nation v. U.S.*, 534 U.S. 84, 94 (2001). *See also King v. Burwell*, 135 S. Ct. 2480, 2492 (2015); *Greater Houston P'ship v. Paxton*, 468 S.W.3d 51, 66 (Tex. 2015).

Here, the fundamental problem with the amended definition of acupuncture is that acupuncture is, by its very nature, an incisive procedure.[14] Acupuncture cannot be practiced in a nonincisive manner. No one disputes that needles penetrate the skin and, as explained in Section I.E, the term "incisive" includes any penetration of the skin. Indeed, the Chiropractic Board apparently does not actually believe the amendment suddenly, overnight, made acupuncture nonincisive. The Chiropractic Board's executive director has expressly acknowledged that acupuncture needles are incisive.[15] The Board's "surplusage" argument rests on an assumption that the only possible impact of Senate Bill 361 was to allow chiropractors to practice acupuncture through a fictional definition, thus implicitly

---

[14] CR 493.

[15] *See also* Chiropractic Board July 11, 2012 ad hoc meeting, at 1:46:00, available at https://www.tbce.state.tx.us/Hearings/Acupuncture20120711.MP3, at which Yvette Yarbrough admitted that "while [acupuncture] is in practice an incisive procedure, it's defined as non-incisive."

9

acknowledging that the amendment did nothing to actually change what acupuncture is.

Third, other principles of statutory construction counsel against the Board's interpretation. For instance, statutes should not be interpreted to lead to absurd results. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008). To interpret the definition of acupuncture as carving out an exemption from licensure for chiropractors would defeat the purpose of occupational regulations and potentially harm the public.[16] The Board's rules signal that the Board believes the intensive educational and training requirements mandated by the Legislature for the practice of acupuncture are not necessary—which is illustrated by the fact that the Chiropractic Board requires a lackluster 100 hours of training and does not regulate the practice of acupuncture by chiropractors. *See* 22 TEX. ADMIN. CODE §§ 78.14(b), (d).[17] Just as the Acupuncture Board would not be qualified to second-guess the legislatively mandated education requirements for the safe performance of nursing, the Chiropractic Board is not qualified to grant chiropractors the right to practice acupuncture while exempting them from all mandated education and training requirements.

---

[16] *See* Acupuncture Association's Brief, at 28-33.

[17] CR 249-51, 253, 284, 577.

Fourth, once more, the scope of chiropractic is set forth in the Chiropractic Chapter, and it is inappropriate to resort to the Acupuncture Chapter to determine that scope. Thus, even if a term in the Acupuncture Chapter is surplusage, this does nothing to change the scope of chiropractic in the Chiropractic Chapter.[18] Under the Chiropractic Chapter, by virtue of the broad prohibition against incisive procedures (save for needles used for diagnostic blood draws), it is clear that the chapter envisions needles to be incisive.

**D. Though there is sometimes overlap among activities two regulated professions can perform, an amendment to the definition of acupuncture in the Acupuncture Chapter did not result in chiropractors being authorized to engage in the entirely separate profession of acupuncture.**

The Chiropractic Board mischaracterizes that the Acupuncture Association believes there can never be any overlap among regulated professions. The Acupuncture Association has never claimed that an Occupations Code chapter cannot create an exemption for professionals regulated by a separate regulatory board. Instead, the Acupuncture Association believes that the addition of the

---

[18] The Chiropractic Board also claims that because the Legislature is charged with knowledge of the law when it enacts a statute and because remedial statutes are to be interpreted broadly, it is necessary for the Court to defer to the Board's construction of the relevant statutes. But both of these doctrines assume it is appropriate to look beyond the express language of the Chiropractic Chapter and rely on canons of construction to determine the scope of chiropractic—which it is not. *DeQueen*, 325 S.W.3d at 637. Further, as has been explained, even if the Legislature intended for the amendment to the definition of acupuncture to exempt chiropractors from the licensure requirements of the Acupuncture Chapter, the attempt was unsuccessful.

11

phrase "nonincisive, nonsurgical" into the Acupuncture Chapter did not successfully create any exemption or "carve out" for chiropractors from the requirements of that chapter. To have created such an exemption, the Legislature would have needed to amend the Chiropractic Chapter to authorize chiropractors to practice acupuncture or in the very least would have needed to amend the Acupuncture Chapter's exemption provision to exempt chiropractors from the chapter's requirements. Senate Bill 361 did neither of these things.

Further, the Board ignores that though there may be times when two or more types of practitioners can perform the same procedure, the Occupations Code has nonetheless created a regime in which regulatory boards regulate unique professions, each with independent licensure requirements and oversight by independent boards. Here, the Board is not merely authorizing chiropractors to practice another procedure. It is authorizing chiropractors to practice an entirely separate profession that is subject to distinct licensure requirements and regulated by a separate board. This devalues not only acupuncturists but also chiropractors who are dually licensed as chiropractors and acupuncturists. The Acupuncture Association is not aware of any other professional rules in which a governing board has announced that its members can engage in an entirely separate profession that is regulated by another board. The Chiropractic Board has also not identified any examples in its brief.

**E. The cases relied on by the Chiropractic Board do not support that the two-word amendment to the definition of acupuncture created an exemption from the requirements of the Acupuncture Chapter for chiropractors.**

One primary case the Chiropractic Board relies on highlights a distinctly different circumstance in which the Legislature *has* successfully carved out an exemption from a profession's licensing requirements and demonstrates why the Board's argument in this case fails. In *Rogers v. Texas State Board of Architectural Examiners*, the issue was whether the Occupations Code chapter regulating architects exempted engineers engaging in certain practices from the requirements of that chapter. 390 S.W.3d 377 (Tex. App.—Austin 2011, no pet.). The Architecture Chapter's exemption states: "This chapter and any rule adopted under this chapter do not limit the right of an engineer licensed under [the Engineering Chapter] to perform an act, service, or work within the scope of the practice of engineering as defined by that chapter." TEX. OCC. CODE § 1051.601. The exemption additionally sets forth parameters for engineers engaging in practices that overlap with the practice of architecture. *Id.* This Court held that the two chapters "cross-reference each other so that the interpretation of one statute necessarily involves interpretation of the other," and this overlap dictated that the Court could not grant deference to either the Engineering Board's or Architecture Board's interpretation of the statutes at issue. *Id.* at 384.

13

The same is not true here. There is nothing in either the Chiropractic or Acupuncture Chapter cross-referencing the other or stating that the two chapters are to be referenced together. Further, it is significant that it is precisely because of the significant cross-over between the Architecture and Engineering Chapters that the Court refused to defer to either agency's interpretation of its governing statutes. *Id.* at 384-85. Here, there is not only no cross-over between the Chiropractic and Acupuncture Chapters, but the issue is the practice of ***acupuncture*** by chiropractors—something clearly within the domain and expertise of the Acupuncture Board rather than the Chiropractic Board. *See id.* at 384. It is also noteworthy that the Court concluded that determining whether the engineers exceeded the scope of their licenses should be made by reference to the Engineering Chapter's scope of practice provision, not the Architecture Chapter. *Id.* at 387-88; *see also Harlingen Family Dentistry, P.C. v. Tex. Health & Human Servs. Comm'n*, 452 S.W.3d 479, 482 (Tex. App.—Austin Nov. 25, 2014, pet. dism'd) ("An agency's rules must comport with the agency's authorizing statute."). It is improper for the Board to attempt to insert an additional exemption into the Acupuncture Chapter by latching onto a definition in that chapter that makes no reference to chiropractic or chiropractors (and also does not include the words "except," "exclude," or the like).

Likewise, *Texas Association of Psychological Associates v. Texas State Board of Examiners of Psychologists* does not offer the Board support. There, this Court considered whether the Psychology Board exceeded its authority in adopting rules requiring psychological associates to practice psychology under the supervision of psychologists. 439 S.W.3d 597 (Tex. App.—Austin 2014, no pet.). Contrary to the Chiropractic Board's assertion, the Court did not conclude the Psychology Board's rules were valid by importing language from a separate statute. Instead, it concluded the rules were valid because (1) the rules did not contravene specific statutory language in the Psychology Chapter and (2) the rules did not run counter to the general objectives of the Psychology Chapter. *Id.* at 603-06. And while the Court mentioned language in the Insurance Code defining "psychological associate" as someone practicing under the supervision of a psychologist, it did not base its holding on the language. *Id.* at 606. Here, unlike in *Psychological Associates*, the Board not only asks this Court to extract broad significance from two words added to another chapter that makes no mention of chiropractors, but also requests that the Court use those two words as the sole basis for determining that chiropractors may practice acupuncture.

Additionally, *Texas Board of Chiropractic Examiners v. Texas Medical Association* is unhelpful to the Chiropractic Board. The Board contends that in *Texas Medical Association* this Court acknowledged that the phrase "incisive" in

15

the Chiropractic Chapter is ambiguous. This is false. The Court did not decide the meaning of the term "incisive" because the Texas Medical Association did not challenge the Board's definition of that word in its rules. 375 S.W.3d at 480. And importantly, the Court left open the question of whether, as a matter of statutory construction, the Chiropractic Chapter's lone exception for diagnostic blood draw needles from the chapter's prohibition against incisive procedures reflects the Legislature's intent for all other needle use (including use of acupuncture needles) to be prohibited. *Id.* at 478. That question is now presented in this case. The Court should conclude that the definition of incisive in the Chiropractic Chapter is a prohibition against needle use with only one exception for diagnostic blood draws.

But to the extent the Court wishes to entertain whether there is any distinction between a "common" or "technical" definition of incisive, as the parties argued in *Texas Medical Association*, this is a distinction without a difference. In *Texas Medical Association*, the Court stated that medical dictionaries define "incision" as a "cut" while non-medical dictionaries define the term to include "piercing." 375 S.W.3d at 479-80. But even assuming the term "incisive" could be limited to "cutting,"[19] "cut" is defined in at least some medical dictionaries as "to

---

[19] *See* 22 TEX. ADMIN. CODE § 78.13(a)(4).

penetrate with a sharp object; strike a narrow opening in."[20] "Cut," "pierce," and "penetrate" are also synonymous.[21] Thus, regardless of whether a "common" or "medical" dictionary is consulted, "incisive" includes penetration by a sharp object. And it cannot be disputed that all needles, including acupuncture needles, are sharp objects that penetrate the skin. This is the most logical conclusion. It is absurd to envision a regulatory scheme in which practitioners, agencies, and courts are required to examine the heads of each type of acupuncture needle (and other needles chiropractors might attempt to use) under a microscope to determine whether a particular needle has a beveled head. *See In re Blair*, 408 S.W.3d 843, 848 (Tex. 2013).

Finally, if the Court believes there is any ambiguity in any of the relevant statutory language, as alternatively urged by the Chiropractic Board, the Board's interpretation is unreasonable and entitled to no deference, as argued in the Acupuncture Association's opening brief.[22] Moreover, if the Court is to afford administrative deference to any agency, it should defer to the Acupuncture Board since that is the agency created by the Legislature to oversee the practice of

---

[20] *See* http://medical-dictionary.thefreedictionary.com/cut.

[21] http://www.thesaurus.com/browse/cut.

[22] Acupuncture Association's Brief, at 28-45.

17

acupuncture. *See Rogers*, 390 S.W.3d at 384; *Tex. Med. Ass'n*, 375 S.W.3d at 477-78.[23]

**F.      Legislative history is irrelevant to unambiguous statutes and, even if considered, does not support the Chiropractic Board's position.**

The Chiropractic Board contends that Senate Bill 361's legislative history should be considered by this Court, pointing to language in *Rogers* in which the Court described the legislative history in that case as "illuminating." 390 S.W.3d at 385. But the *Rogers* holding was not premised on legislative history. Instead, the Court construed the statutes at issue and reached its conclusion on the basis of the language of those statutes, merely noting that legislative history also supported its interpretation. *Id.* at 385-86. It would be error for this Court to decide this case on the basis of legislative history: the Texas Supreme Court has repeatedly advised that legislative history should not be considered when a statute is unambiguous. *See Entergy Gulf States*, 282 S.W.3d at 437, 443; *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 652 n.4 (Tex. 2006). Because the relevant scope of practice statutes are unambiguous, the Court need not consider the Chiropractic Board's lengthy discussion of legislative history. But if the Court believes a review

---

[23] *See also* CR 401-02, 408-13, 762-64.

18

of legislative history is appropriate, the history supports the Acupuncture Association's position.[24]

The Board improperly relies on Representative Gray's statements during legislative debate on Senate Bill 361. It is axiomatic that a statement by a legislator cannot make an unambiguous statute ambiguous nor does it evidence legislative intent. *See Robinson v. Crown Cork & Seal Co., Inc.*, 335 S.W.3d 126, 191-92 (Tex. 2010); *Ojo v. Farmers Grp., Inc.*, 356 S.W.3d 421, 435 (Tex. 2011). Thus, Representative Gray's statements do not inform of the Legislature's intent. But nonetheless, Representative Gray's statements support the Acupuncture Association, not the Chiropractic Board. Representative Gray correctly stated that it was necessary to amend the ***Chiropractic Chapter*** to authorize chiropractors to practice acupuncture without licensure by the Acupuncture Board because the amendment to the definition of acupuncture "put [the practice of acupuncture by chiropractors] under the Acupuncture Board" and would not have allowed chiropractors to practice acupuncture without a license issued by and oversight from that board.[25]

The Chiropractic Board also relies on a 1997 letter from former Representative Tom Uher, in which he told the Attorney General that "incisive"

---

[24] Acupuncture Association's Brief, at 37-42.

[25] CR 478.

19

was not intended to be so broad as to prohibit all needle use. To the extent Representative Uher's statement is afforded any weight, it is belied by actual legislative history. As explained in the Acupuncture Association's opening brief, Representative Uher offered a floor amendment in 1995 (the session before Senate Bill 361 was enacted) that limited the practice of chiropractic to nonincisive procedures, but with an exception for acupuncture, blood draws, and needle EMG. *Tex. Med. Ass'n*, 375 S.W.3d at 469 n.7.[26] His amendment, however, was successfully amended by Representative Janek to remove the exceptions for acupuncture and needle EMG, with Representative Janek stating "[t]his amendment would take out any ability by the chiropractors to put needles into people." *Id.* Thus, contrary to Representative Uher's post hoc statement, the intent of the amendment as adopted was the opposite—it was meant to prohibit needle use in its entirety, save one narrow exception. *Id.*

The Board also misrepresents an irrelevant House Research Organization bill analysis to argue that the amendment to the Acupuncture Chapter authorized chiropractors to practice acupuncture.[27] This bill analysis was not analyzing the amendment to the definition of acupuncture in the Acupuncture Chapter. It was analyzing the proposed committee amendments that would have amended the

---

[26] *Id.* at 38-39.

[27] Chiropractic Board's Brief, at 8.

20

Chiropractic Chapter to expressly authorize chiropractors to practice acupuncture under the authority of the Chiropractic Board—and those amendments did not become law.[28] As to the other two bill analyses referred to by the Board, one of them says nothing about any intent to allow chiropractors to practice acupuncture without a license issued by the Acupuncture Board.[29] The other states that the intent of the Senate's amendment to the definition of acupuncture in the Acupuncture Chapter was to allow chiropractors to practice acupuncture,[30] but it also acknowledged that the amendment was stricken to instead amend the Chiropractic Chapter to allow chiropractors to practice acupuncture.[31]

**G.** **The Court should decline to read the Acupuncture Chapter's scope of practice and the Chiropractic Chapter's scope of practice in pari materia.**

The Court should not accept the Chiropractic Board's invitation to adopt the Attorney General's position that the Acupuncture and Chiropractic Chapters' scope of practice definitions should be read *in pari materia*. At the outset, an Attorney General opinion is simply advisory and is not binding authority on a court. *City of San Antonio v. Tex. Att'y Gen.*, 851 S.W.2d 946, 950 (Tex. App.—Austin 1993,

---

[28] CR 468-74.

[29] CR 459-63.

[30] CR 507-12.

[31] *Id.*

21

writ denied). Further, because the Chiropractic and Acupuncture Chapters are clear and unambiguous, it is inappropriate to resort to extrinsic aids of construction. *Greater Houston P'ship*, 468 S.W.3d at 58; *City of Round Rock v. Rodriguez*, 399 S.W.3d 130, 137 (Tex. 2013). But to the extent the Court looks to the Attorney General's opinion for guidance, the Court should be unpersuaded.

As explained, the Occupations Code is delineated into chapters with each regulating a distinct profession, such as physicians, physician assistants, nurses, chiropractors, and acupuncturists. Each chapter has its own board regulating its own profession, not any other profession. The statutory scope of chiropractic is established by the Chiropractic Chapter, not any other chapter of the Occupations Code. *See Tex. Med. Ass'n,* 375 S.W.3d at 467. Further, the Legislature has granted the Chiropractic Board the power to regulate, and adopt rules governing the practice of, ***chiropractic***, not any other profession. TEX. OCC. CODE §§ 201.151-.152. To conclude that the Chiropractic Board also has the authority to adopt rules regulating acupuncture—a practice that is under the domain of a separate state agency—is to strip the specific powers the Legislature has delegated to each agency of any purpose. If each profession regulated under the Occupations Code can creatively "borrow" words from entirely separate regulatory regimes governing other professions to expand its own limited scope of practice, what was the

purpose of creating specific scopes of practice for distinct professions, each with its own statutorily-mandated educational, training, and licensure requirements?

Indeed, the purpose of the Occupations Code provisions regulating healthcare professionals is to protect public safety and health. For this reason, courts have declined to conflate entirely separate chapters of the Occupations Code. *See Neasbitt v. Warren*, 22 S.W.3d 107, 111 (Tex. App.—Fort Worth 2000, no pet.); *Lenhad v. Butler*, 745 S.W.2d 101, 105 (Tex. App.—Fort Worth 1988, writ denied).

When the Legislature intends to assign a meaning from one chapter of the Occupations Code into another, it does so explicitly. *See, e.g.*, TEX. OCC. CODE §§ 157.051, 162.052. The reason for this is apparent: it is nonsensical for a reader of the Occupations Code to be required to consult an entirely separate chapter that is not cross-referenced or mentioned in a profession's governing chapter to determine the actual scope of the profession's practice. *See Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011). Thus, when the Legislature does not incorporate a term from one statute explicitly into another statute, courts will not assume it intended to do so. *See, e.g., DLB Architects, P.C. v. Weaver*, 305 S.W.3d 407, 410 (Tex. App—Dallas 2010, pet denied); *In re Doe 3*, 19 S.W.3d 300, 304 (Tex. 2000) (Gonzales, J., concurring).

Moreover, it is particularly improper to "import[ ] a definition from a different statute adopted for different purposes." *Matagorda Cnty. Appraisal Dist. v. Coastal Liquids Partners, L.P.*, 165 S.W.3d 329, 335 (Tex. 2005). If statutes concern unrelated subjects, "[a] word defined in one act does not necessarily determine the word's meaning in another act dealing with a different subject." *Brookshire v. Houston Indep. Sch. Dist.*, 508 S.W.2d 675, 678 (Tex. Civ. App.—Houston [14th Dist.] 1974, no writ). Nothing in the Chiropractic Chapter indicates any legislative intent to apply the definition of "acupuncture" in the entirely separate Acupuncture Chapter to the Chiropractic Chapter in order to determine—and exceed—the Chiropractic Chapter's statutory scope. While the Chiropractic Board attempts to label the Acupuncture Chapter and Chiropractic Chapter as addressing the same subject matter, it fails to explain what common subject matter they address: to the contrary, one governs the profession of acupuncture and the other the distinct profession of chiropractic.

This Court has repeatedly refused to read statutes *in pari materia* when they were not written to achieve the same objective. *See Nat'l Media Corp. v. City of Austin*, No. 03-12-00188-CV, 2014 WL 4364815, at *1-2 (Tex. App.—Austin Aug. 27, 2014, no pet.); *Tex. State Bd. of Chiropractic Exam'rs v. Abbott*, 391 S.W.3d 343, 347-49 (Tex. App.—Austin 2013, no pet.); *In re JMR*, 149 S.W.3d 289, 294 (Tex. App.—Austin 2004, no pet.). Under this Court's precedent, the

Chiropractic Board may not use an isolated provision in another Occupations Code chapter that contains no reference to the practice of chiropractic to **expand** chiropractic's limited scope of practice. *See Brooks v. Tex. Med. Bd.*, No. 03-14-00239-CV, 2015 WL 3827327, at *2 (Tex. App.—Austin June 18, 2015, no pet.).

## H. The Acupuncture Association's statutory construction argument is not dependent on factual safety issues.

The Chiropractic Board incorrectly argues that the Acupuncture Association has raised factual safety issues that are not susceptible to summary judgment. The Acupuncture Association instead asserts that the Legislature has **statutorily determined** what education and training is required for the safe and effective practice of acupuncture. *See, e.g.*, TEX. OCC. CODE §§ 205.203, .206; *see also Andrews v. Ballard*, 498 F. Supp. 1038, 1054 (S.D. Tex. 1980).[32] The Board lacks authority to second-guess the education and training that the Legislature has said is required.

Indeed, this Court recently observed—as it has done many times—that the purpose of occupational practice statutes is to protect the public from unqualified

---

[32] The Chiropractic Board has filed a motion to strike all references to websites made by the Acupuncture Association in its opening brief. The Acupuncture Association has already responded to that motion, but notes again that the Association's argument is one of statutory construction. The internet material noted in the Association's brief is intended to provide background information for the Court and is not "evidence" to support any disputed factual assertions.

25

practitioners. *Psychological Assocs.*, 439 S.W.3d at 603. As a matter of law, because chiropractors have not completed the statutorily-required education and training for the practice of acupuncture, chiropractors are (as determined by the Legislature) unqualified to perform the procedure. The Acupuncture Association does not challenge "the relative qualifications of licensed chiropractors versus licensed acupuncturists to perform acupuncture"[33]: it challenges chiropractors' lack of the educational qualifications expressly required by the Legislature.[34]

Further, the Board is wrong that safety is irrelevant to this Court's decision. First, as mentioned, the Court should avoid interpreting statutes to lead to absurd results. *Blair*, 408 S.W.3d at 848. Second, the Court must consider the result of its interpretation—and the result here would be a risk to public health and contravention of the purpose of occupational regulations. *See City of Houston v. Clark*, 197 S.W.3d 314, 318 (Tex. 2006). Additionally, the Board's pattern of aggrandizing its scope of practice to promote its own profession rather than to

---

[33] Chiropractic Board's Brief, at 14.

[34] While the Chiropractic Board in the trial court attached a conclusory, self-serving affidavit by a chiropractor who practices acupuncture without a license, the affidavit failed to create any relevant fact dispute. CR 714-15. The affidavit merely stated the chiropractor's belief that chiropractors may practice acupuncture without the education or training the Legislature has declared is necessary for the safe and effective performance of the procedure. The Board points to no authority supporting the proposition that an individual may second-guess or overrule the Legislature—and he cannot, as a matter of law.

26

protect the public is relevant to the Court's consideration because it counsels against granting the Board any deference in its interpretation of the relevant laws.

Because the Board's rules authorizing chiropractors to practice acupuncture exceed the statutory scope of the practice of chiropractic, this Court should reverse the trial court's judgment and render judgment for the Acupuncture Association.[35]

## II.

**The statutory scheme purportedly authorizing chiropractors to practice acupuncture with significantly less education and training in acupuncture than licensed acupuncturists violates Texas Constitution, Article XVI, Section 31.**

The Chiropractic Board argues that the prohibition in the Texas Constitution on the Legislature preferring one school of medicine over another does not apply because chiropractic is not a school of medicine. *See* TEX. CONST. art. XVI, § 31 ("The Legislature may pass laws prescribing the qualifications of practitioners of

---

[35] To the extent the Court believes any fact issues exist, the Acupuncture Association asks the Court to remand for a new trial. There is no merit to the Board's claim that the Acupuncture Association waived the right to a new trial by failing to raise a fact issue in response to the Board's summary judgment motion. Both parties sought summary judgment on grounds that this dispute is a question of statutory construction. And the Acupuncture Association has claimed that the Board's rules present public safety concerns and that acupuncture needles are incisive, as a matter of statutory and rule construction. The Acupuncture Association also asked the trial court to reconsider its order or, alternatively, grant a new trial. CR 767-72. If the Court believes the issue of the Board's authority to adopt the rules requires consideration of facts beyond the statutory and rule language, it would be appropriate to remand for a new trial. *See* TEX. R. APP. P. 43.2(d), 43.3(a); *Coker v. Coker*, 650 S.W.2d 391, (Tex. 1983) (determining that when both parties moved for summary judgment claiming the issue was one of law, it was proper to reverse and remand for the trial court to determine issues of fact since fact issues precluded summary judgment for both parties).

medicine in this State …, but no preference shall ever be given by law to any schools of medicine."). The Acupuncture Association agrees that when chiropractors practice *chiropractic*, they are exempt from the Medical Practice Act. *See* TEX. OCC. CODE § 151.052(3) (exempting "a licensed chiropractor engaged strictly in the practice of chiropractic as defined by law"). But the same is not true when chiropractors practice *acupuncture*. The Board's response misses the point of the Acupuncture Association's argument.

The Acupuncture Association argues that in the event the Court concludes that the amendment to the Acupuncture Chapter authorized chiropractors to practice acupuncture without a license from the Acupuncture Board, and without completing the extensive training required for that license, then the statutory scheme is unconstitutional because it prefers chiropractors over acupuncturists by allowing chiropractors to practice acupuncture with less training than acupuncturists.

Both acupuncture and chiropractic were historically considered practices of medicine that could only be performed by physicians. *Thompson*, 570 S.W.2d at 130; *Teem v. State*, 183 S.W. 1144, 1147-48 (Tex. Crim. App. 1916). While chiropractic was eventually exempted from the Medical Practice Act (so long as it is strictly practiced within the confines of the Chiropractic Chapter), acupuncture has never been fully severed, and the Acupuncture Board still operates under the

supervision of the Texas Medical Board. *See, e.g.*, TEX. OCC. CODE §§ 151.052, 205.101; *Andrews*, 498 F. Supp. at 1039-40. Further, while chiropractic is limited to treating the musculoskeletal system (TEX. OCC. CODE § 201.002(b)), acupuncture, by its statutory definition, treats any condition in the human body (*id.* § 205.001(2)). Acupuncture is therefore a practice of medicine.

While the Board is correct that chiropractic is not the practice of medicine by virtue of its exemption from the Medical Practice Act, this is only the case so long as it is practiced ***strictly*** in accordance with its statutory scope. *Id.* §§ 151.002(13), 151.052. If it is not practiced in this strict manner, it is not only the practice of medicine, but it is also the unauthorized practice of medicine. *See Tex. Orthopaedic Ass'n v. Tex. State Bd. of Podiatric Exam'rs*, 254 S.W.3d 714, 717, 721 (Tex. App.—Austin 2008, pet. denied). Chiropractors who practice acupuncture are not strictly engaged in the practice of chiropractic; thus, they are practicing medicine. Further, as noted, a practice that encompasses the whole body is the practice of medicine. *Schlichting v. Tex. State Bd. of Med. Examn'rs*, 310 S.W.2d 557, 564 (Tex. 1958). If a chiropractor treats the entire body, such as by performing acupuncture, the chiropractor ceases to strictly practice chiropractic and instead is practicing medicine. *Id.*

The Chiropractic Board has admittedly authorized chiropractors to practice acupuncture without a license from the Acupuncture Board and with limited

training (100 hours) in the procedure. Acupuncturists, on the other hand, are required to hold a license issued by the Acupuncture Board and complete intensive training and education (2,625 hours or more over four years) to perform acupuncture. TEX. OCC. CODE §§ 205.203, .206, .255; 22 TEX. ADMIN. CODE §§ 183.2, 183.4. As the Texas Supreme Court concluded in *Schlichting,* the Texas Constitution prohibits allowing one group of practitioners to participate in an area of the practice of medicine on less onerous terms than another group of practitioners:

> [T]o allow [a practitioner] to be licensed upon easier terms than those required for the practice of 'medicine' would violate … the state Constitution …. The same would be true should we permit it to be practiced without any license at all, while enforcing a statute that requires practitioners of 'medicine' to be licensed and on quite onerous conditions.

310 S.W.2d at 564. If the statutory scheme authorizes chiropractors to practice acupuncture without a license from the Acupuncture Board, and with far less onerous education requirements, the Legislature "prefers" chiropractors over acupuncturists, in violation of Texas Constitution, Article XVI, Section 31.

## III.

**The legislation that purportedly authorized chiropractors to practice acupuncture violates the one-subject rule in Texas Constitution, Article III, Section 35(a).**

Because Texas Constitution, Article III, Section 35(a) prescribes that a bill containing more than one subject is unconstitutional, if Senate Bill 361—the

30

Acupuncture Board's sunset legislation—enlarged the practice of chiropractic to include acupuncture, it violated the one-subject rule. The Chiropractic Board incorrectly contends that this constitutional mandate is inapplicable because Senate Bill 361 was intended to exempt chiropractors practicing acupuncture from the Acupuncture Chapter's licensing and oversight requirements, and thus was related to the subject of the functions of the Acupuncture Board.

The single subject of sunset legislation is an executive agency, not the substantive policy subject to that agency's oversight. In fact, the sunset statute itself indicates that matters tangentially related to agency continuance should be addressed in "other legislation," thus confirming the distinct nature of the subject matter. *See* TEX. GOV'T CODE § 325.015(b)(2). As a consequence, sunset legislation addressing the structure of the Acupuncture Board cannot expand or contract the practice of chiropractic.

The Board attempts to compare the Medical Practice Act's exemptions for certain medical professionals (Texas Occupations Code, Section 151.052), to the amendment to the Acupuncture Chapter, claiming that Senate Bill 361 similarly exempted chiropractors from the Acupuncture Chapter. This convoluted argument stumbles at the gate. First, there is no indication the exemptions in the Medical Practice Act were enacted as part of a different agency's sunset bill. Second, the exemptions in the Medical Practice Act are expressly stated. But there is nothing in

31

the Acupuncture Chapter stating that chiropractors are exempt from the requirements of that chapter.

As was concluded in the House, the amendments to the Chiropractic Chapter authorizing chiropractors to practice acupuncture were not germane to the Acupuncture Board's sunset bill. Because these direct amendments were not germane, it follows that an amendment purportedly indirectly authorizing the same conduct is also not germane. *See W. Orange-Cove Consol. Indep. Sch. Dist. v. Alanis*, 107 S.W.3d 558, 600 (Tex. 2003). Germaneness and the constitutional one-subject mandate are one and the same. *See Jessen Assocs., Inc. v. Bullock*, 531 S.W.2d 593, 601 (Tex. 1976). Thus, if the amendment to the Acupuncture Chapter authorizes chiropractors to practice acupuncture, it rendered that portion of the bill unconstitutional.

## IV.

### The Chiropractic Board has waived any argument regarding its laches defense.

Though the Chiropractic Board has now abandoned its statute of limitation defense, it invites the Court—without argument—to affirm the judgment on the basis of laches. In the trial court, the Board did not argue laches in its motion for summary judgment or in response to the Acupuncture Association's cross-motion. Thus, this defense is waived. TEX. R. CIV. P. 166a(c); *Fed. Deposit Ins. Corp. v. Lenk*, 361 S.W.3d 602, 611 (Tex. 2012). The Board also has waived its laches

32

argument by failing to adequately brief it in this Court. TEX. R. APP. P. 38.1(i); *Foster v. City of El Paso*, 396 S.W.3d 244, 258 (Tex. App.—El Paso 2013, no pet.). The Court should not consider the laches argument.

## **PRAYER**

The Texas Association of Acupuncture and Oriental Medicine prays that the Court:

(1)     reverse the trial court's judgment, render judgment for the Association, and declare invalid and enjoin 22 Texas Administrative Code §§ 78.13(a)(4), (b)(2), (e)(2)(C), and 78.14 (previously §§ 75.17(a)(3), (b)(4), (e)(2)(C), and 75.21);

(2)     alternatively, reverse the trial court's judgment, render judgment for the Association, and declare that the statutory scheme created by Senate Bill 361's amendment to the Acupuncture Chapter is unconstitutional because the Legislature may not favor one school of medicine over another nor enact legislation containing more than one subject; or

(3)     in the further alternative, if the Court believes any fact issue precludes rendition of judgment, reverse the trial court's judgment and remand for a new trial.

The Association further prays for any other relief to which it may be entitled.

Respectfully submitted,

By: _/s/ Craig T. Enoch_

Craig T. Enoch
  Texas Bar No. 00000026
  cenoch@enochkever.com
Melissa A. Lorber
  Texas Bar No. 24032969
  mlorber@enochkever.com
Shelby O'Brien
  Texas Bar No. 24037203
  sobrien@enochkever.com
ENOCH KEVER PLLC
600 Congress Avenue
Suite 2800
Austin, Texas 78701
512.615.1200 Telephone
512.615.1198 Fax

***Attorneys for Texas Association of
Acupuncture and Oriental Medicine***

34

## CERTIFICATE OF COMPLIANCE

Appellant certifies that this Reply Brief of Appellant (when excluding the caption, table of contents, index of authorities, signature, proof of service, certificate of compliance, and appendix) contains 7,472 words.

/s/ *Craig T. Enoch*
Craig T. Enoch

## CERTIFICATE OF SERVICE

I hereby certify that, on November 18, 2015, the foregoing Reply Brief of Appellant Texas Association of Acupuncture and Oriental Medicine was served via electronic service on the following:

Joe H. Thrash
Assistant Attorney General
Administrative Law Division
P.O. Box 12548
Austin, Texas 78711
Joe.Thrash@texasattorneygeneral.gov

/s/ *Craig T. Enoch*
Craig T. Enoch